THE PEOPLE ex rel. Comrs. of Highways

v.

THE BOARD OF SUPERVISORS OF SHELBY COUNTY.

*Opinion filed November 1, 1897.*

ROADS AND BRIDGES—*when mandamus to compel county aid will be denied.* A petition for *mandamus* to compel a county board to pay a sum appropriated under the Road and Bridge act of 1883 to aid a town in building a bridge, will be denied, where, after the appropriation, the township highway commissioners abandoned the bridge then contemplated, and afterward, when a new law was in force, (Road and Bridge act of 1887,) built a bridge on a different plan, costing twice as much, without complying with the requirements of the new law concerning county aid.

*Board of Supervisors* v. *People ex rel.* 65 Ill. App. 410, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. JACOB FOUKE, Judge, presiding.

J. L. RAY, and H. J. HAMLIN, for appellants.

ANTHONY THORNTON, for appellee.

Per CURIAM: After the writ of error by which this cause was first brought directly to this court from the circuit court had been dismissed for want of jurisdiction, (159 Ill. 242,) an appeal was taken to the Appellate Court, and the judgment of the circuit court was there reversed without remanding the cause. This appeal was then taken to this court.

We have carefully examined and considered the record and the arguments of counsel, and fully coincide with the conclusion reached by the Appellate Court and the reasons given for the decision. The opinion of that court, delivered by Mr. Justice WALL, will therefore be here adopted. It is as follows:

"In this proceeding by *mandamus* a judgment was entered requiring the county board to pay the commission-

ers of highways the sum of $1400 in aid of the construction of a bridge built by the latter.   It appears that the county board, at its September session, 1883, appropriated such a sum, upon a petition presented by the highway commissioners, in aid of the construction of a bridge, specially described as a 'slough bridge,' to be located a short distance west of the bridge then standing across the Okaw river.   Said bridge was to be of wood, fifty feet long, and to cost not exceeding $2800.   Contracts for building it were let and some work was done by the contractors, when further action by them was prevented by a writ of injunction issued at the instance of an adjacent land owner.   The injunction remained in force until a final and adverse decision by the Supreme Court, in September, 1886.   Soon thereafter the highway commissioners and the contractors conferred in regard to going on with the work of building the bridge, but no definite conclusion was reached and the subject was deferred until July, 1887, when it was determined not to build that bridge, and an agreed sum was paid to the contractors for their damages in that behalf.   On the 9th of June, 1888, the highway commissioners contracted for the building of an iron bridge one hundred feet long, to be attached to the west end of the river bridge, at a cost of $6050, and the same having been completed, they filed the original petition herein for *mandamus* on the first day of October, 1889. The petition as finally amended recited the proceedings in 1883, the injunction, a change of the plan of the bridge, and its construction, as just stated, and that the board had been requested, but refused, to pay one-half the cost thereof, or even the $1400 originally appropriated, and praying that it might be required to pay the last mentioned sum.

"Conceding that the proceedings in 1883 were in substantial compliance with the statute, and that the county could have been required to pay the sum then appropriated for the bridge then in view, the question is whether

that appropriation would be good for another structure, differing in size, material and location, though quite as useful and costing more money.   The whole matter is dependent upon the statute.   By the act in force July 1, 1883, when the first petition was presented to the county board, it was provided that when a bridge is necessary, for which a town is wholly or in part responsible, the cost of which will exceed twenty cents on the $100 of the latest assessment roll, and when the levy of road and bridge tax for that year in the town was for the full amount of sixty cents on each $100 allowed by law to be raised, the major part of which was required for the ordinary repair of roads and bridges, the commissioners may petition the county board for aid, and if the foregoing facts should appear, the county board should appropriate a sum sufficient to meet one-half of the expense of the work, provided the town should furnish the other half.   The joint funds so raised should be expended by the commissioners of highways and by two persons appointed by the county board, and any surplus of the fund appropriated by the county board should be returned to the county treasury; and it was further provided that the commissioners should file with their petition a careful estimate of the probable cost of the work, and their affidavit that the same was necessary and would not be made more expensive than was needed for the purpose.   By the act in force July 1, 1889, this section was changed so as to require the full levy of sixty cents on the $100 for the two preceding years, and expressly requiring that the petition for aid should be presented before any contract for work and material or any other expense should be entered into, and that all contracts and expenditures should be under the control of the commissioners of highways and three members of the county board, none of whom should reside in the town asking aid, and that the county should not be liable for any part of the expense or pay any part of the appropriation until the work was fully done and .

accepted and properly certified by the supervisors, with an itemized account of the expenditures, to be presented at a meeting of the board after the completion of the work.

"The act of 1883 contemplated that no appropriation should be made unless an estimate of the cost was presented with the petition and an affidavit showing that the work was necessary and would not be made more expensive than needed, and, whatever the appropriation, no more than was really necessary should be expended, and the surplus, if any, should lapse into the treasury. This was to protect the county against unnecessary and extravagant expenditures. If, for example, the desired purpose could be accomplished by the building of a bridge to cost $1000, then no more should be expended. In the act of 1887 the county treasury was protected by requiring that the full levy of sixty cents on the hundred should have been made for two years, instead of one under the former act, and that all contracts and expenditures should be under the control of a committee composed of the three highway commissioners and three supervisors not resident of the town, and that no money should be drawn from the county until the work was completed and accepted and itemized accounts of expenditures presented to a subsequent meeting of the board. In case of a tie in the committee on any question, a reputable citizen and householder of the county, not resident in the town, was to be chosen to act as umpire, and his decision should be final. These provisions were evidently intended to prevent unnecessary outlays of the county funds.

"We are of the opinion that, the bridge provided for in the proceedings of 1883 having been abandoned and a different structure having been built after the act of 1887 took effect, the appropriation for the former could not be made applicable to the latter. While the act of 1883 was in force its provisions were binding in all proceedings for the purpose of obtaining county aid in such cases.

The act of 1887 was in force when the plan was changed and the bridge first designed was abandoned.   By such change and abandonment the county was relieved from further responsibility.   It may be that all that was necessary could have been accomplished with less than the appropriation made in 1883, and it was an essential prerequisite of the law then in force that an estimate and affidavit of the necessary cost should accompany the petition.   It would pervert the law and might greatly prejudice the rights of the county to permit the commissioners to abandon the plan then presented and adopt another which might unnecessarily require the outlay of the whole appropriation.   This they did, and built a bridge twice as long and costing more than twice as much.   The bridge contemplated in the appropriation of 1883 having been abandoned and a different law then being in force, it was necessary to seek the aid of the county under the provisions of the new law. Confessedly this was not done. It may be that the bridge which was built was worth all it cost, and it may be that the expenditure was necessary to accomplish the desired object; but whether so or not, the law regulating the proceedings whereby the county may be required to contribute has not been complied with."

The appellants not being entitled to the writ, the refusal of the Appellate Court to remand the cause upon reversing the judgment was proper.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BOGGS, having heard the case in the Appellate Court, took no part in the decision in this court.